UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

GARY McDANIEL,                    )
                                  )
            Plaintiff             )
                                  )
      v.                          )    CIVIL NO. 2:09 cv 119
                                  )
MARY ELGIN, Calumet Township      )
Trustee; INDIANA DEPARTMENT OF    )
WORKFORCE DEVELOPMENT,            )
                                  )
            Defendants            )

OPINION AND ORDER

This matter is before the court on the Motion for Summary
Judgment [DE 74] filed by the defendant, Mary Elgin, on August
15, 2011, and the Motion for Summary Disposition Regarding
Defendant's Motion for Summary Judgment [DE 90] filed by defen-
dant Elgin on October 5, 2011.  Because the plaintiff, Gary
McDaniel, did not respond to Elgin's motion for summary judgment
and the time to do so has since passed, the Motion for Summary
Disposition Regarding Defendant's Motion for Summary Judgment [DE
90] is **GRANTED**.  For the reasons set forth below, the Motion for
Summary Judgment [DE 74] also is **GRANTED.**

Background

The plaintiff, Gary McDaniel, began working in the office of
the Calumet Township Trustee in November 1997, serving under
Dozier Allen.  In 2003, Mary Elgin became the Calumet Township
Trustee.  During Elgin's tenure, McDaniel reported to several

different supervisors.  In 2004, Rose Curtis and JoAnn Robinson were McDaniel's supervisors and were responsible for assigning McDaniel tasks.  Cora Harris, Dectrick Raspberry, Marsha Moore, Phyllis Harvey, and Magnolia Lewis supervised McDaniel from January 2007 through October 2008.  McDaniel's supervisors reported to the Chief Deputy, Donna Frazier, and Frazier and all other township employees reported to Elgin.

The Calumet Township Trustees Office was responsible for providing temporary and emergency assistance to township residents.  A service investigator was assigned to each application for assistance.  The investigator was required to interview and investigate the application to determine if the applicant was eligible for assistance.  A service investigator supervisor had to approve the applicant's request for relief assistance and was responsible for supervising the daily activities of service investigators.  However, the service investigator supervisors did not have the authority to hire, fire, promote, or demote employees.  Elgin was the only official with this authority.

From January 2003 to October 2008, McDaniel was assigned to the south office and worked at a desk located in an open floor area.  McDaniel was responsible for confirming and verifying applicants' information and was required to leave the office periodically.  In December 2003, Clarence Colby, the deputy over

McDaniel's department, disciplined him for being tardy and falsifying an attendance report and recommended his termination. McDaniel said that he did not intend to falsify his attendance record, and Frazier rejected Colby's recommendation to terminate McDaniel. Frazier reprimanded McDaniel and assigned him to the General Assistance Department at the south office as a service investigator.

McDaniel was disciplined numerous times throughout his employment as a service investigator. In 2004, Curtis, Lewis, and Robinson recommended that McDaniel be reprimanded because he failed to follow office procedure with regard to an applicant's request for rental assistance, violated office policies and procedures, and approved township assistance for an ineligible applicant. Harvey also recommended that McDaniel be reprimanded due to unsatisfactory work and absenteeism. In 2004, McDaniel was docked approximately 44 hours pay over four pay periods for excessive absenteeism, and in 2007, he was docked approximately 37 hours for absenteeism. Harvey again cited McDaniel for absenteeism in September 2006 and in November 2006. Robinson issued an oral reprimand notice because McDaniel failed to follow procedures. Frazier denied McDaniel a promotion to general assistance supervisor in February 2007. McDaniel again was disciplined for failing to follow procedures in June 2007, and

that same month, Lewis recommended the issuance of a written reprimand but it later was changed to an oral reprimand.

McDaniel also received poor reviews in 2006 and 2008, indicating that improvement was needed. He received low marks for quality of work, interpersonal skills, initiative, flexibility, and attendance.

On January 9, 2008, McDaniel reported to Lewis that he felt that Harvey was trying to single him out for no reason. Lewis confronted Harvey, and she responded that she thought McDaniel did not respect her. Lewis made a written report and held a meeting on January 10, 2008, with Harvey, McDaniel, and Harris. McDaniel did not raise any allegations of sexual harassment against Harvey in his complaint to Lewis or in the meeting.

Following this meeting, Harvey questioned McDaniel about two applications for assistance. McDaniel told Harvey that she was "starting to get on [his] nerves." (Deft. Exh. T44 p. 6) Harvey reported the incident to Frazier.

McDaniel continued to get reprimanded from other supervisors. In June 2008, Harris issued an oral reprimand notice, and Moore reprimanded McDaniel for approving payment of an ineligible applicant's NIPSCO bill. McDaniel again was docked pay over four pay periods for excessive absenteeism.

4

McDaniel filed a charge of discrimination with the Gary Human Relations Commission on January 14, 2008.  In his charge, McDaniel alleged that he was sexually harassed.  The EEOC charge was investigated by the Gary Human Relations Commission and the Equal Employment Opportunity Commission.  Elgin had no knowledge of the allegations of sexual harassment until McDaniel filed the charge with the EEOC.  McDaniel gave oral notice to Elgin on January 16, 2008, and written notice on January 17, 2008.

Elgin began investigating the charge immediately after receiving notice.  She concluded that Harvey did not harass McDaniel and that any friction between the two related to legitimate employment matters.  Elgin's investigation revealed that McDaniel never reported the sexual harassment to his supervisor, although he reported other behavior.  McDaniel told Elgin that Harvey asked him out to dinner and that he continually suffered from job harassment and intimidation beginning in February 2007.  However, McDaniel did not report the harassment because he "had other priorities."  McDaniel also reported that Harvey gave him too many service slips.  Harvey would rush service slips to him, which he viewed as harassment, though not of a sexual nature.  However, it was common practice and appropriate for supervisors to pass out service slips.  Elgin offered to transfer Harvey to another office, but he refused because he did not own a car.

In his charge filed with the Gary Human Relations Commission, McDaniel cited four incidents of sexual harassment that McDaniel did not report to Elgin during her investigation. First, McDaniel alleges that Harvey grabbed him, hugged him, kissed his ear and neck, felt between his legs, and reached for his zipper in February 2007. Second, he stated that Harvey was waiting to say something to him at the 2007 Christmas party, although he was trying to avoid her. His third allegation was that Rosemary Rodriguez witnessed Harvey rubbing between his legs and trying to kiss him. Harvey told him, "If you don't come to me, I'll come to you. You can't get away from me." Finally, McDaniel alleges that Harvey grabbed his buttocks and tried to rub it up.

McDaniel identified several co-workers and supervisors who he believed witnessed the harassment. McDaniel first reported that Raspberry witnessed McDaniel refusing to go into Harvey's office. Raspberry has denied ever observing this behavior, nor did he observe any acts of sexual harassment by Harvey. Other employees in the south office also have denied ever observing Harvey sexually harassing McDaniel, nor do they believe Harvey called McDaniel into her office more often than she called other employees. McDaniel identified Rodriguez as a witness to Harvey kissing him and rubbing his crotch. Rodriguez testified that she

never saw these events and that McDaniel never told her that Harvey wanted to make out with him, that Harvey liked him, or that Harvey sexually harassed him. In fact, Rodriguez was on sick leave the day Harvey allegedly rubbed McDaniel's crotch and kissed him. Rodriguez also testified that Harvey did not pass over other service providers to hand out service slips to McDaniel.

Elgin employed an anti-discrimination policy that prohibited sexually harassing or offensive conduct in the work place. The policy outlined the type of conduct prohibited and the punishment for any such behavior. The policy directed an employee who was subjected to unwelcome harassment to report the conduct immediately. McDaniel received a copy of the policy in September 2005, but he did not report the harassment.

McDaniel ultimately was fired in October 2008, due to budgetary constraints and the south office closing. The State of Indiana issued a mandate that reduced funding. The plan to reduce the workforce was created in reaction to the mandate and was approved in July 2008. At that time, Frazier and Gloria Jones began to review employees' personnel files and analyzed their job performances to identify the employees who should be terminated. Elgin evaluated Frazier and Jones' recommendation

and McDaniel's performance record when deciding to terminate his employment.

The EEOC and Gary Human Relations Commission investigated the charge and issued McDaniel a notice of dismissal and right to sue. McDaniel filed his *pro se* complaint on April 28, 2009. McDaniel alleges that he was sexually harassed, he was fired in retaliation for filing a charge of discrimination with the EEOC and participating in another employee's, Velia Taneff, federal case, and that his termination was politically motivated because he refused to purchase tickets to political fundraisers. McDaniel subsequently hired an attorney, but his attorney did not file an amended complaint.

Elgin filed a motion for summary judgment on August 15, 2011. After being denied a request for an extension of time, McDaniel was ordered to submit his response by September 30, 2011. No response was filed.

<u>Discussion</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); ***Stephens v. Erickson,*** 569 F.3d 779, 786 (7th Cir. 2009).

The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. A fact is material if it is outcome determinative under applicable law. There must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Summary judgment is inappropriate for determination of claims in which issues of intent, good faith, and other subjective feelings play dominant roles. *Ashman v. Barrows,* 438 F.3d 781, 784 (7th Cir. 2006). Upon review, the court does not evaluate the weight of the evidence, judge the credibility of witnesses, or determine the ultimate truth of the matter; rather, the court will determine whether there exists a genuine issue of triable fact. *Wheeler*, 539 F.3d at 634 (*citing Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury

might find in favor of that party after a trial.

> The inquiry performed is the threshold in-
> quiry of determining whether there is the
> need for a trial--whether, in other words,
> there are any genuine factual issues that
> properly can be resolved only by a finder of
> fact because they may reasonably be resolved
> in favor of either party.

> [T]his standard mirrors the standard for a
> directed verdict under Federal Rule of Civil
> Procedure 50(a), which is that the trial
> judge must direct a verdict if, under the
> governing law, there can be but one reason-
> able conclusion as to the verdict.

> *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-122 (2000) (setting out the standard for a directed verdict); ***Celotex Corp***., 477 U.S. at 322-23, 106 S.Ct. at 2553; ***Stephens,*** 569 F.3d at 786; ***Argyropoulos v. City of Alton***, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); ***Springer v. Durfling-er,*** 518 F.3d 479, 483 (7th Cir. 2008)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Elgin attempts to attack McDaniel's complaint by going through each statement, whether a fact or allegation, as though each were an individual claim for relief. For example, McDan-

iel's complaint states that Elgin and Harvey were shopping
buddies. Elgin treats this statement as a separate claim for
relief rather than a fact tending to show that Elgin favored
Harvey.[1] After sifting through McDaniel's complaint, the court
has deciphered five potential claims. McDaniel alleges that he
was subject to sexual harassment, was discriminated against on
the basis of his gender, was terminated in retaliation for filing
a charge with the EEOC, was terminated in retaliation for assist-
ing with Taneff's federal law suit, and was terminated for poli-
tical reasons in violation of his constitutional rights.[2] *See*
Pltf. Compl. p. 6 ("My job was taken away due to retaliation &
political reason due to my filing the sex discrimination charge &
my friendship with V. Tariff [sic] which the Trustee Mary Elgin
hate." [sic]).

McDaniel's complaints of sexual harassment, sexual discrimi-
nation, and termination in response to filing a charge of dis-
crimination with the EEOC and participating in Taneff's suit

_____

[1]To the extent Elgin is trying to argue that these facts cannot be used
to substantiate McDaniel's complaint because they were not alleged or reason-
ably related to the EEOC charge, McDaniel was not required to set forth all of
his factual allegations in the EEOC charge. At that time McDaniel was pro-
ceeding *pro se* and was held to a more liberal standard. *See Hanna v. Brown*,
1995 WL 103789, *2 (N.D. Ill. 1995).

[2] Although McDaniel filed his complaint *pro se*, he later retained an
attorney. Therefore, his complaint is no longer entitled to a liberal
interpretation. *See Hanna*, 1995 WL 103789 at *2.

arise under Title VII.  The court will address these issues in
turn.

McDaniel's predominate complaint is that he was sexually
harassed by Harvey and subjected to a hostile work environment.
Although Elgin first opposes as untimely the introduction of
certain evidence supporting McDaniel's claim for sexual harass-
ment, the court will pretermit this argument because McDaniel's
claim fails irrespective of the evidence he is permitted to
introduce in support of his complaint of sexual harassment.

Title VII provides that it is unlawful to "fail or refuse to
hire or to discharge any individual, or otherwise to discriminate
against any individual with respect to his compensation, terms,
conditions, or privileges of employment, because of such indi-
vidual's . . . sex."  42 U.S.C. §2000e-2(a)(1). *See also* ***Meritor
Savings Bank, FSB v. Vinson***, 477 U.S. 57, 63, 106 S.Ct. 2399,
2404, 91 L.Ed.2d 49 (1986).  Included in this "spectrum" is a
prohibition against "requiring people to work in a discrimina-
torily hostile or abusive environment." ***Harris v. Forklift
Systems, Inc.***, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d
295 (1993).  Thus, "[w]hen the workplace is permeated with dis-
criminatory intimidation, ridicule, and insult, that is suffi-
ciently severe or pervasive to alter the conditions of the
victim's employment and create an abusive working environment,

Title VII is violated." **Harris**, 510 U.S. at 21, 114 S.Ct. at 370 (quotation marks and citations omitted).

To establish that he was subjected to a hostile work environment, a complainant must show that

> (1) [he] was subjected to unwelcome sexual advances in the form of requests for sexual favors or other verbal or physical conduct of a sexual nature; (2) the harassment was based on [his] sex; (3) the sexual harassment had the effect of unreasonably interfering with [his] work performance in creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well being of the plaintiff; and (4) there is a basis for employer liability.
>
> **Romansizak-Sanchez v. International Union of Operating Engineers, Local 150, AFL-CIO**, 121 Fed. Appx. 140, 144-45 (7th Cir. 2005)(*quoting* **Hall v. Bodine Electric Company**, 276 F.3d 345, 354-55 (7th Cir. 2002)

*See also* **Rhodes v. Illinois Department of Transportation**, 359 F.3d 498, 505 (7th Cir. 2004). A work environment must be both subjectively and objectively offensive in order to be hostile. **Rhodes**, 359 F.3d at 505 (*quoting* **Hilt-Dyson v. City of Chicago**, 282 F.3d 456, 463 (7th Cir. 2002)). Whether an environment is objectively hostile depends on "all of the circumstances, including the frequency and severity of conduct, whether it is threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interfered with an employee's work performance." **Romansizak-Sanchez,** 121 Fed. Appx. at 145 (*quoting* **Smith v.**

*Northeastern Illinois University*, 388 F.3d 559, 566 (7th Cir.
2004)).  *See also Wyinger v. New Venture Gear, Inc.*, 361 F.3d
965, 975-76 (7th Cir. 2004).

In determining whether harassment is "based on sex" in the
context of a hostile environment claim, "[t]he critical issue
. . . is whether members of one sex are exposed to disadvanta-
geous terms or conditions of employment to which members of the
other sex are not exposed." *Oncale v. Sundowner Offshore Ser-*
*vices*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201
(1998).  *See also Hilt-Dyson*, 282 F.3d at 462-63.  In other
words, "an employer cannot be held liable for creating or condon-
ing a hostile working environment unless the hostility is moti-
vated by gender." *Berry v. Delta Airlines, Inc.*, 260 F.3d 803,
808 (7th Cir. 2001).  *See also Oncale*, 523 U.S. at 80, 118 S.Ct.
at 1002 (Ginsburg, J., concurring) (noting that although harass-
ment "need not be motivated by sexual desire," it must be "clear
that the harasser is motivated by general hostility to the
presence of" a particular gender). Thus, the simple fact that a
victim is female does not satisfy the requirement that the
harassment she experienced is based on her sex.  *See Herron v.*
*Daimlerchrysler Corporation*, 388 F.3d 293, 303 (7th Cir. 2004)
(finding that the plaintiff's membership in a protected class
"does not transform" harassment related to him into harassment

14

related to his race).  In particular, harassment based on the fact that the victim had jilted the harasser romantically does not fall under the purview of Title VII protection.  *See Huebschen v. Department of Health and Social Services*, 716 F.2d 1167, 1172 (7th Cir. 1983).

In addition to establishing that the harassment is based on sex, McDaniel must establish employer liability.  *See Romansizak-Sanchez*, 121 Fed. Appx. at 144-45.  If the harasser is a supervisor, the employer is strictly liable subject to an affirmative defense if the harassment does not result in a tangible employment action.  *See Vance v. Ball State University*, 646 F.3d 461, 469-70 (7th Cir. 2011); *Rhodes*, 359 F.3d at 505.  A supervisor is someone with the power to affect directly the terms of employment, including the right to hire, fire, transfer, demote, promote, or discipline.  *Vance*, 646 F.3d at 470.  "We have not joined other circuits in holding that the authority to direct an employee's daily activities establishes supervisory status under Title VII."  *Vance,* 646 F.3d at 470.  Nor does the right to control daily activities coupled with the right to input on performance reviews and train the harassee render someone a supervisor under Title VII.  *Hall*, 276 F.3d at 355.  The harassing individual must have the power to affect the victim's employment.  *Vance*, 646 F.3d at 470.

15

If the harasser is not a supervisor, then McDaniel must show that his employer was negligent in failing to discover or remedy any harassment. *Vance,* 646 F.3d at 470; *Loughman v. Malnati Organization, Inc.*, 395 F.3d 404, 407 (7th Cir. 2005); *Rhodes*, 359 F.3d at 505. Under the negligence standard for coworker harassment, the court must look at the employer's total response to the alleged harassment. *McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 480 (7th Cir. 1996). An employer only is liable "if the employer knew or should have known about the coworker's acts of harassment and fails to take appropriate remedial action." *Berry*, 260 F.3d at 811 (alteration, citation, and quotations omitted). *See also Cardenas v. Frito-Lay, Inc.*, 2002 WL 32357082, *5 (W.D. Wis. Sept. 30, 2002). Remedial action is appropriate if it is prompt and reasonably calculated to end the harassment under the particular circumstances of the case, although the employer's liability does not hinge on the actual cessation of harassment. *See Berry*, 260 F.3d at 811; *McKenzie*, 92 F.3d at 480; *Saxton v. American Telephone and Telegraph Company*, 10 F.3d 526, 536 (7th Cir. 1993). In addition, the victim's expectations of behavior by his employer have no bearing on the negligence analysis. *See Cardenas*, 2002 WL 32357082 at *7 ("Plaintiff might disagree with how certain aspects of the investigation and response were handled, but . . .

16

this is legally irrelevant."); ***Motley v. Tractor Supply Company,***
32 F.Supp.2d 1026, 1050-51 (S.D. Ind. 1998)("Just because an
employee expected more from the employer, or a different re-
sponse, does not mean that the employer failed to take appropri-
ate remedial action, once it was on notice of the problem."). *See
also* ***Saxton***, 10 F.3d at 535.

Although Harvey was termed a supervisor, the record reflects
that she did not have the type of authority necessary to qualify
as a supervisor within the meaning of Title VII.  Harvey was
responsible for assigning and supervising McDaniel's daily tasks,
but she did not have the authority to affect his employment
directly.  She could not fire, demote, or discipline McDaniel.
At his deposition, McDaniel acknowledged that only Elgin had the
authority to fire, promote, demote, discipline, or suspend him.
Although Harvey allegedly threatened to fire McDaniel if he did
not succumb to her advances, McDaniel was aware that Harvey did
not have the authority to follow through with her threat.  Absent
the authority to influence McDaniel's employment directly, Harvey
was not a supervisor within the meaning of Title VII.  Therefore,
the court must determine whether Elgin was negligent in discover-
ing or rectifying the harassment.  *See **Hall,*** 276 F.3d at 355
(finding that harasser was not a supervisor even though he had
the authority to assess the plaintiff's work, provided input on

her performance reviews, and trained the plaintiff and other less experienced employees).

The employer is not charged with knowledge of impropriety committed by every employee. "[N]otice or knowledge of the harassment is a prerequisite for liability in coemployee harassment cases." *Hall*, 276 F.3d at 355. The court begins this analysis by considering whether the employer had a designated channel for complaints of harassment or whether the notice was received by someone the complainant reasonably believed could receive and forward complaints. The employee must set forth enough information in the notice to make the reasonable employer believe harassment may have occurred. Once the employer has knowledge of the harassment, the employer is relieved of liability if it takes reasonable steps to discover and rectify the acts of sexual harassment. *Hall*, 276 F.3d at 356.

Elgin gave the employees a handbook containing a sexual harassment policy in September 2005. The handbook directed the employees to report sexual harassment as soon as possible and set forth the ramifications for harassing a co-worker or subordinate. McDaniel did not follow the handbook. He first gave notice of the harassment over two years after it began and after he filed a charge with the EEOC. McDaniel first gave oral notice on January 16, 2008, and written notice on January 17, 2008. Elgin immedi-

18

ately began investigating the claim on January 18, 2008.  By this time the harassment had ceased.

Because Elgin had a policy and was not notified of the harassment, she was not negligent for failing to discover the harassment sooner.  McDaniel acknowledged that he received and was aware of the sexual harassment policy.  However, McDaniel chose not to follow the appropriate channels.  Elgin cannot be charged with knowledge of the co-worker harassment unless McDaniel followed the policy and notified someone of the harassment.  *See Hall*, 276 F.3d at 356.  Elgin was not responsible for monitoring every interaction among co-workers.  Therefore, Elgin acted appropriately under the circumstances.

The more important question is whether Elgin was negligent in rectifying the harassment once she was apprised of it.  The reasonableness of the employer's response depends on the severity of the harassment and how much the employer knows about the alleged harassment.  *Fuller v. Caterpillar, Inc.*, 124 F.Supp.2d 610, 615 (N.D. Ill. 2000).  "In general, an employer fails to act reasonably when it unduly delays taking remedial action, or when the action it does take is not reasonably likely to prevent continued harassment."  *Fuller*, 124 F.Supp.2d at 615.  The test is not whether the remedial action succeeded, but whether the

employer's response was reasonable under the circumstances. *McKenzie*, 92 F.3d at 480.

Elgin immediately began to investigate the charge. She held a meeting with McDaniel on January 18, 2008. McDaniel told Elgin that Harvey asked him to dinner and that the harassment and intimidation began in February 2007. He claimed that Harvey would harass him on the floor during work hours, constantly called him into her office, and at the Christmas party she touched him and asked if he wanted to take some food home. Harvey denied the charges. Elgin also interviewed other employees who McDaniel identified as having knowledge of the incidents. The employees denied observing harassment and did not believe Harvey called McDaniel into her office more than others or that she assigned him more service slips. Elgin then held a meeting with Harvey and McDaniel. At the meeting, McDaniel's complaints were limited to job related disagreements, including Harvey leaving slips on his desk, complaining about his work, and coming out onto the floor where he worked.

Elgin's investigation did not reveal the type of pervasive misconduct that McDaniel now alleges. McDaniel's chief complaints during the investigation concerned the assignment of service slips, Harvey's criticism of his work, and feeling uncomfortable. Beyond his complaint that Harvey touched him at the Christmas

party to ask if he wanted to take food home and his broad allega-
tions of harassment, he did not cite one incident that was sexual
in nature.  Notice of conduct that is not sexual in nature, such
as a personality conflict, does not trigger the employer's duty
to respond.  *Zimmerman v. Cook County Sheriff's Dept.*, 96 F.3d
1017, 1018 (7th Cir. 1996) (explaining that notice of a personal-
ity conflict did not put employer on notice of sexual harass-
ment).  Because the extent of sexual harassment was not confirmed
by Elgin's investigation, Elgin acted reasonably under the cir-
cumstances by offering to transfer McDaniel.  *See Zimmerman*, 96
F.3d at 1018; *Fuller*, 124 F.Supp.2d at 616 (finding that employer
acted reasonably by promptly investigating the complaint, inform-
ing employees of the harassment policy, and moving the plain-
tiff's desk).  In light of the absence of sexual harassment
revealed by the investigation, Elgin could not have been expected
to do more.  Elgin's motion for summary judgment is **GRANTED** on
this issue.

McDaniel also alleges that he was terminated and denied a
promotion and wage increase.  It is not clear from McDaniel's
complaint why he believes these actions were taken.  However,
McDaniel checked the box on the EEOC charge for gender discrimi-
nation.  To the extent he believes these actions were the result

of gender discrimination, his claim cannot be sustained under Title VII or 42 U.S.C. §1983.

Title VII enables a plaintiff to prove discrimination by direct evidence of discriminatory intent or, where no direct evidence exists, by using the indirect-burden shifting method established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-805, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 1092, 67 L.Ed.2d 207 (1981). *See Moser v. Indiana Department of Corrections*, 406 F.3d 895, 900-01 (7th Cir. 2005). The direct method requires the plaintiff to show through either direct or circumstantial evidence that the employer's adverse employment action was impermissibly motivated. *Wilkins v. Riveredge Hospital*, 130 Fed. Appx. 823, 828 (7th Cir. 2005).

The most general statement of the *McDonnell Douglas* method of proof is that the plaintiff has the initial burden of showing that: 1) he belongs to a protected group; 2) he was performing to the employer's legitimate expectations; 3) he suffered an adverse employment decision; and 4) the employer treated similarly situated employees who are not in the protected group more favorably. *See Moser*, 406 F.3d at 900; *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004); *Williams v. Waste Management of Illi-*

*nois, Inc.*, 361 F.3d 1021, 1029 (7ᵗʰ Cir. 2004). This framework is flexible and may be adapted to fit each case. *Burdine*, 450 U.S. at 253 n.6, 101 S.Ct. at 1094 n.6; *Wohl v. Spectrum Manufacturing, Inc.*, 94 F.3d 353, 359 (7ᵗʰ Cir. 1996).

Title 42 U.S.C. §1983 entails a similar analysis for establishing gender discrimination. To state a prima facie case under §1983, the plaintiff must prove that "(1) [he] is similarly situated to members of the unprotected class; (2) [he] was treated differently from members of the unprotected class; and (3) the defendant acted with discriminatory intent." *Kehrer v. City of Springfield*, 104 F.Supp.2d 1001, 1008 (*citing Johnson v. City of Fort Wayne*, 91 F.3d 922, 944—45 (7ᵗʰ Cir. 1996)). "To establish liability under either §1983 or Title VII, plaintiff must demonstrate that her sex was a motivating factor in defendants' decisions regarding her employment." *Sullivan v. Village of McFarland*, 457 F.Supp.2d 909, 915 (W.D. Wis. 2006) (*citing Venters v. City of Delphi*, 123 F.3d 956, 973 n.7 (7ᵗʰ Cir. 1997)). *See also Hoskins v. City of Milwaukee*, 259 Fed. Appx. 868, 870 (denying gender discrimination claim under §1983 because plaintiff did not show that similarly situated females were treated more favorably).

Once the plaintiff has met this initial burden, "a presumption of discrimination arises, and the employer must articulate a

legitimate, nondiscriminatory reason for its employment action."
*Moser*, 406 F.3d at 895; *O'Neal*, 392 F.3d at 911. The defendant's
burden is not one of persuasion, but rather of production and
"can involve no credibility assessment." *St. Mary's Honor Center
v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 2748, 125 L.Ed.2d
407 (1993); *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2106. The
burden then shifts back onto the plaintiff to show that the
reason given by the defendant is just a pretext for discrimina-
tion. *Moser*, 406 F.3d at 900-01. The plaintiff cannot establish
pretext merely by showing that the "reason was doubtful or mis-
taken." *Crim v. Board of Education of Cairo School District No.
1*, 147 F.3d 535, 541 (7th Cir. 1998). Rather, the plaintiff must
show that the employer is lying or that the employer's reasoning
has no basis in fact. *Guerrero v. Ashcroft*, 253 F.3d 309, 313
(7th Cir. 2001); *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467,
471 (7th Cir. 2000); *Crim*, 147 F.3d at 541.

Despite the shifting burden of production, the ultimate
burden of persuasion remains at all times with the plaintiff.
*Moser*, 406 F.3d at 901; *Haywood v. Lucent Technologies, Inc.*, 232
F.3d 524, 531 (7th Cir. 2003); *Stockett v. Muncie Indiana Transit
System*, 221 F.3d 997, 1001 (7th Cir. 2000). A plaintiff alleging
discrimination, however, has a lesser burden when proceeding on a
summary judgment motion. In *Anderson v. Baxter Healthcare Corp.*,

13 F.3d 1120 (7th Cir. 1994), the Seventh Circuit stated:

> Both *McDonnell Douglas* and [*St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 113 S.Ct. at 2747] speak to the burden the plaintiff bears at trial. However, for summary judgment purposes, the nonmoving party, in this case the plaintiff, has a lesser burden. He must only "produce evidence from which a rational fact-finder could infer that the company lied" about its proffered reasons for dismissal.
>
> 13 F.3d at 1124 (*quoting Shager v. Upjohn*, 913 F.2d 398, 401 (7th Cir. 1994))

*See also Plair v. E.J. Brach & Sons, Incorporated*, 105 F.3d 343, 349 (7th Cir. 1997); *Cliff v. Board of School Commissioners of the City of Indianapolis, Indiana*, 42 F.3d 403, 412 (7th Cir. 1994). If the plaintiff is unable to meet his burden, his claims must fail.

Based on the record, McDaniel cannot make a prima facie showing of gender discrimination. Not only has he failed to show that he was performing at his employer's reasonable expectations, a claim that is contrary to the performance reviews of record, he also has failed to show that Elgin treated similarly situated female employees more favorably.

The evidence of record shows that McDaniel was performing at an unsatisfactory level. McDaniel was evaluated by multiple supervisors and received sub-par reviews from each supervisor. The reviews reflect excessive absenteeism, for which McDaniel was

punished, and unsatisfactory job performance.  McDaniel has not come forth with any evidence to contradict this and create a genuine issue of material fact that he was meeting his employer's reasonable expectations.  *See Coco v. Elmwood Care, Inc.*, 128 F.3d 1177, 1180 (7th Cir. 1997) (finding that the plaintiff failed to demonstrate that he met the employer's legitimate employment expectations).

McDaniel attempted to identify similarly situated employees who he believed were treated more favorably by explaining that Elgin's family and friends were exempt from the reduction in force and that employees with less seniority and worse perfor-mance reviews received promotions and training.  However, McDan-iel did not identify whether the employees who he believed were treated more favorably were within or outside the protected class.  Absent this evidence, the court cannot deduce whether the adverse employment actions were taken for impermissible reasons. McDaniel has not pointed to one incident of favoritism within the office of women over men and therefore has failed to establish a nexus between his gender and the adverse employment actions he alleges to have suffered.

Furthermore, McDaniel did not submit any proof that the employees who were not terminated or who received promotions and training were in fact similarly situated.  The only evidence of

record shows that the female employees Elgin retained had higher performance ratings and met or exceeded their supervisors' expectations. At this stage, McDaniel cannot rest solely on his pleadings and must come forth with some evidence to show that he can support a prima facie case. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Absent any evidence beyond the ambiguous allegations within McDaniel's complaint that the retained and more favorably treated employees were similarly situated, McDaniel has failed to meet this burden and show that a genuine issue of material fact precludes summary judgment. Therefore, Elgin's motion for summary judgment is **GRANTED** with regard to McDaniel's complaint of gender discrimination under Title VII and §1983.

McDaniel also alleges that he was terminated in reaction to filing a charge of discrimination with the EEOC. Title VII's separate antiretaliation provision "seeks to prevent harm to individuals based on what they do, i.e., their conduct." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, 126 S.Ct. 2405, 2412, 165 L.Ed.2d 345 (2006). Unlawful retaliation in violation of Title VII occurs "when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids", or "'testified, assisted, or participated in' a Title VII proceeding or investigation." 42 U.S.C. §2000e-3(a)*; Kampmier v. Emeritus Corp*, 472 F.3d 930, 939

(7th Cir. 2007)(internal quotations omitted) (*citing* ***Burlington Northern***, 548 U.S. at 59, 126 S.Ct. at 2410).  An employer effectively retaliates against an employee "by taking actions not directly related to [ ] employment or by causing [ ] harm outside the workplace." ***Burlington Northern***, 548 U.S. at 63, 126 S.Ct. at 2412.  *See also* ***Thompson v. North American Stainless, LP***, ___ U.S. ___, 131 S.Ct. 863, 868, 178 L.Ed.2d 694 (2011).

McDaniel has two ways of proving retaliation: directly or indirectly.  ***Kampmier***, 472 F.3d at 939.  To prove retaliation under the indirect method, "a plaintiff must show that after filing the complaint of discrimination only she, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though she was performing her job in a satisfactory manner." ***Kampmier***, 472 F.3d at 940 (*citing* ***Stone v. City of Indianapolis***, 281 F.3d 640, 644 (7th Cir. 2002)).

As explained above, McDaniel has failed to show that he was performing in a satisfactory manner.  McDaniel received sub-par performance reviews, was reprimanded on multiple occasions, and was docked pay for excessive absenteeism.  McDaniels was obligated to come forth with some evidence to support this element of the prima facie case, but he has chosen to remain silent.  *See* ***Coco,*** 128 F.3d at 1180 (explaining that the plaintiff was obliged

to present evidence that he was meeting his employer's legitimate expectations).  His claim fails on this ground alone, however, even if McDaniel could overcome this hurdle, he again has not pointed to one similarly situated employee who did not file a charge with the EEOC and was treated more favorably.  McDaniel did not set forth the credentials of any employee who he believes was treated more favorably, including his or her seniority, performance reviews, or any other factors that may make him or her more or less qualified.  Absent this evidence, the court has no basis on which to judge whether the retained employees or those who received promotions and training were in fact similarly situated.  The only evidence of record shows that the female employees Elgin retained during the reduction in force had performance evaluations that exceeded McDaniel's reviews.  Therefore, the court must assume that the employment decisions were based on the employee's credentials.  McDaniels cannot rest solely on his pleadings and has failed to show that the evidence creates a genuine issue of material fact that must be left for a jury to resolve.  *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

McDaniel finally claims that he was retaliated against for participating in Taneff's federal case.  The retaliation provision of Title VII protects employees from participating in suits that arise under Title VII.  42 U.S.C. §2000e-3(a)*; Kampmier*, 472

F.3d at 939.  However, Taneff's lawsuit was for unlawful and politically motivated termination under 42 U.S.C. §1983 and is unrelated to Title VII.  *See **Taneff v. Calumet Twp**.*, 2009 WL 500558 (N.D. Ind. Feb. 26, 2009).  Therefore, McDaniel's participation in Taneff's suit is outside the scope of Title VII's retaliation provision.

McDaniel's complaint also sets forth facts that may give rise to a claim under 42 U.S.C. §1983 for unlawful politically motivated termination.  Title 42 U.S.C. §1983 states:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory . . . subjects, or
> causes to be subjected, any citizen of the
> United States or other person within the
> jurisdiction thereof to the deprivation of
> any rights, privileges, or immunities secured
> by the Constitution and laws, shall be liable
> to the party injured in an action at law,
> suit in equity, or other proper proceedings
> for redress. . . .

To succeed on a claim under §1983, the plaintiff must allege that the acts were performed under the color of state law and deprived the plaintiff of "rights, privileges, or immunities secured by the Constitution or laws of the United States." ***Bayview-Lofberg's, Inc. v. City of Milwaukee***, 905 F.2d 142, 144 (7th Cir. 1990).  Although McDaniel does not cite the constitutional rights he alleges Elgin violated, it is well established that the First Amendment protects public employees from suffering

adverse employment actions because of their political beliefs. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 71, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). To establish a prima facie case for unlawful political termination, the plaintiff must prove that his conduct was constitutionally protected and was a substantial or motivating factor in the employment decision. *Greene v. Doruff*, ___ F.3d ___, 2011 WL 4839162, *2 (7th Cir. 2011) (defining motivating factor); *Hall v. Babb*, 389 F.3d 758, 762 (7th Cir. 2004). The burden then shifts to the defendant to set forth a legitimate, nonpolitical reason for the employment decision. *Greene*, 2011 WL 4839162 at *4; *Hall*, 389 F.3d at 762.

If the defendant is sued in her official capacity, the plaintiff faces the additional hurdle of proving that the unconstitutional acts were taken pursuant to an official policy or custom. This is because government entities cannot be held liable under a theory of respondeat superior for the actions of their employees*. McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir. 1993). "A plaintiff may demonstrate an official policy through: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority."

*Estate of Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir.
2007).  Moreover, a plaintiff cannot claim municipal liability
unless he can demonstrate that the enforcement of the policy was
the "moving force" behind the constitutional violation.  *Corn-field by Lewis v. Consolidated High School Dist. No. 230*, 991
F.2d 1316, 1324 (7th Cir. 1993).  *See also Oklahoma City v.
Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791
(1985) (plurality opinion) ("At the very least, there must be an
affirmative link between the policy and the particular constitu-
tional violation alleged.").

McDaniel does not clearly state whether he intended to sue
Elgin in her individual or official capacity.  However, McDaniel
identified Elgin by her official title, the Calumet Township
Trustee, and the charge he filed with the EEOC was against the
Calumet Township Trustee's Office.  From this information alone
it appears that McDaniel intended to sue Elgin in her official
capacity. McDaniel also stated at his deposition that he intended
to sue one defendant.  Because his chief complaint was for sexual
harassment under Title VII, and Title VII does not authorize suit
against supervisors in their individual capacities, the court
assumes that the one defendant McDaniel intended to sue was Elgin
in her official capacity.  *Sullivan*, 457 F.Supp.2d at 914.
Therefore, McDaniel must show that it was the custom or practice

within the Calumet Township Trustee's Office to adversely affect employment for failing to support candidates.

The sole allegation in McDaniel's complaint is that Colby told him he would be fired if he did not purchase political tickets to support Elgin's candidacy. McDaniel's deposition later revealed that he believed he was fired because he did not purchase political tickets between 2003 and 2008 and because Elgin questioned him about purchasing political tickets. However, these isolated incidents do not reveal that it was the policy or custom of the office to punish employees for declining to purchase or partake in political events. McDaniel has not pointed to one incident where an employee was punished or fired for declining to do the same. *See **Phelan v. Cook County***, 463 F.3d 773, 790 (7th Cir. 2006) (stating the conduct must be widespread to constitute a policy); ***Crosby v. Ward***, 843 F.2d 967, 983 (7th Cir. 1988) (stating that there must be more than one instance to establish a custom). The fact that McDaniel's constitutional rights may have been violated for failing to purchase tickets to political fundraisers or support certain candidates is not enough to establish that the office had a policy or custom for punishing employees for their political involvement.

McDaniel also may establish that he suffered a violation of his constitutional rights if he can show that someone with final

policymaking authority caused him to suffer an adverse employment action because of his decision or refusal to partake in political activities.  It appears that Elgin is the only one within the office who had final decision making authority.  Although McDaniel cited to one event involving Elgin, he has failed to show that his refusal to partake in political events was the moving force behind the adverse employment actions he suffered.  Assuming Elgin did in fact ask McDaniel about purchasing tickets, he did not explain any action Elgin took to reprimand him as a result of his refusal.  There was a substantial span of time between Elgin asking McDaniel to purchase tickets in October 2006, and the denial of a promotion in February 2007, and his termination in 2008.  Nor has McDaniel made any attempt to show how Elgin adversely affected his employment in response to his refusal to purchase tickets from other co-workers or because of his political affiliation.  The record does not reflect any nexus between his constitutionally protected right to support or refuse to support political candidates and the adverse employment actions he faced.  McDaniel has not shown that his termination may have been because of his political beliefs.  The mere fact that he did not support Elgin and later was terminated is not enough to show that his political beliefs were the motivating factor behind Elgin's decision.

―――――――――――

Because the plaintiff did not respond to Elgin's motion for summary judgment and the time to do so has since passed, the Motion for Summary Disposition Regarding Defendant's Motion for Summary Judgment [DE 90] filed by Elgin on October 5, 2011, is **GRANTED**.

Based on the foregoing reasons, McDaniel was unsuccessful in establishing a prima facie case under Title VII for sexual harassment, gender discrimination, or retaliation, or under §1983 for gender discrimination or unlawful political termination. Therefore, the Motion for Summary Judgment [DE 74] filed by the defendant, Mary Elgin, on August 15, 2011, is **GRANTED.**

ENTERED this 19th day of October, 2011


                              s/ ANDREW P. RODOVICH
                                 United States Magistrate Judge